UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

KAREN MORRIS,

        Plaintiff,

vs.

LEE COUNTY and SUNSHINE           Case No. 19-cv-00790
MOBILE VILLAGE RESIDENTS
ASSOCIATION, INC.,

        Defendants.

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

COMES NOW the Plaintiff, KAREN MORRIS, by and through her undersigned counsel and sues the Defendants, LEE COUNTY and SUNSHINE MOBILE VILLAGE RESIDENTS ASSOCIATION, INC. (collectively "DEFENDANTS") and states as follows:

**INTRODUCTION**

1.    This is a civil action brought pursuant to the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601, *et seq.* and 42 U.S.C. §§ 1982, *et seq.*

**I. JURISDICTION AND VENUE**

2.    This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 and 1343, because this lawsuit is brought under the Fair Housing Act, 42 U.S.C. §§ 3601, *et seq.* and § 3613.

3.    The Court has jurisdiction to declare the rights and legal relations of the parties and to order further relief pursuant to 28 U.S.C. §§ 2201 and 2202. The Court is authorized to issue a preliminary injunctive relief and a temporary restraining order pursuant to Federal Rules of Civil Procedure 65(a) and 65(b), and to award relief under 42 U.S.C. § 300a-7(c) and (d), including but not limited to, damages and attorneys' fees.

4.     Venue is proper in the Middle District of Florida, Fort Myers Division, under 28 U.S.C. §1391(b) because these claims arose in this District and the Defendant's principal place of business, mailing, address, and registered agent are all in this District.

## II. PARTIES

5.     Plaintiff KAREN MORRIS ("MORRIS" and/or "Plaintiff") is a resident of Lee County who owns and resides in a unit within a mobile home housing complex located in Fort Myers, Florida known as "SUNSHINE MOBILE VILLAGE."

6.     Defendant LEE COUNTY is a political subdivision of the State of Florida.

7.     Defendant SUNSHINE MOBILE VILLAGE RESIDENTS ASSOCIATION, INC. ("SUNSHINE") is a Florida non-profit corporation, with its principle and mailing address at 13701 Shoveler Drive, Fort Myers, FL 33980, owns and operates SUNSHINE MOBILE VILLAGE.

8.     SUNSHINE is responsible for administering and governing SUNSHINE MOBILE VILLAGE, its housing complex, pursuant to its Articles of Incorporation, Declaration of Condominium and By-Laws, its Rules and Regulations, and policies and practices.

## FACTS

9.     MORRIS suffers and has a history of from suffering from a mental impairment that substantially limits one or more of her major life activities, including cognition and self-care, and has been diagnosed with PTSD, depression, social anxiety, severe anxiety disorder, and a hyperactive thyroid. Accordingly, MORRIS has a "handicap" with the meaning of 42 U.S.C. § 3602(h).

10.    MORRIS resides at 13651 Gannet Drive, Fort Myers, FL 33908.

11.     MORRIS's home and lot constitute a dwelling within the meaning of 42 USC § 3602(b).

12.     In order to have equal use and enjoyment of her home, it is imperative that MORRIS has the ability to live with her emotional support animals ("ESAs"), four female Rhode Island Reds named "Rita," "Rhonda," "Raquel," and "Rodey."

13.     Rhode Island Red is an American breed of domestic fowl.

14.     MORRIS received the four hens when they were small chicks as an anonymous gift after losing her husband in an accident and both her parents to cancer after having been their long-term care givers.

15.     MORRIS's ESAs provide companionship and affection that ameliorate the symptoms of her disabilities.

16.     The ESAs sleep from dawn to dusk, and unlike the male of their species, do not crow, nor do they roam in the SUNSHINE VILLAGE Community or otherwise wander anywhere outside of MORRIS' property line.

17.     The four ESAs live and stay with MORRIS within her dwelling and other than occasionally accompanying her outside in her yard, remain in MORRIS's dwelling.

18.     MORRIS meticulously and regularly feeds, cleans, and cares for her ESAs.

19.     At all times relevant to this Complaint, Defendants LEE COUNTY and SUNSHINE had actual knowledge of MORRIS's disabilities and her need to reside with her ESAs for disability-related emotional support.

20.     LEE COUNTY's Land Development Code Section 34-1291 places restrictions on the ability of residents that live in unincorporated Lee County[1] to maintain chickens. Specifically, the code states:

> "The keeping, raising or breeding of horses and other livestock, including poultry of all kinds usually and customarily considered as farm animals, and the keeping, raising or breeding of reptiles, marine life or animals not indigenous to the state, may be permitted only as set forth in this division. This will not be interpreted as applying to pet stores or hobbyists keeping aquariums or domestic tropical birds in their own homes."

21.     At all times relevant to this Complaint, SUNSHINE's rules prohibit residents from having animals considered to be "livestock."

22.     MORRIS requested a reasonable accommodation of her disability-related need to have her ESAs reside in her home from both LEE COUNTY and SUNSHINE in the form of waiver of LEE COUNTY's zoning ordinance and SUNSHINE's restriction prohibiting "livestock."

23.     LEE COUNTY's zoning laws, rules, regulations, and other restrictions are superseded by federal law, including specifically, the FHA.

24.     On or around August 12, 2019, LEE COUNTY and SUNSHINE were provided a letter from MORRIS's psychiatrist, Dr. Tariq Halim, attesting that MORRIS's emotional support animals are necessary for MORRIS's mental health "because their presence will mitigate the symptoms she is currently experiencing." (August 12, 2019, Verification Letter from Board Certified Psychiatrist, Dr. Tariq Halim, is marked, attached, and incorporated herein as "Exhibit 1" [hereafter "Psychiatrist Letter"].)

---

[1] Within the City of Fort Myers residents may have up to four hens.

25.     On September 3, 2019, SUNSHINE responded through counsel demanding extraneous information regarding MORRIS's need for an accommodation as well as information that had already been provided. For example, SUNSHINE demanded to know "what each chicken does for you which the other cannot" and the credentials of MORRIS's medical provider. (September 3, 2019, Constructive Denial of Accommodation Letter is marked, attached, and incorporated herein as "Exhibit 2" [hereafter "Constructive Denial Letter"].).

26.     MORRIS has no obligation to prove that each chicken does something unique that in order to be entitled to the accommodation she requested; the demand that MORRIS's psychiatrist explain "what each chicken does for you which the other cannot" is a demand for extraneous information.

27.     The credentials of MORRIS's medical provider are clearly indicated upon the letter SUNSHINE was provided. Dr. Halim is a Board-Certified Psychiatrist, licensed by the State of Florida. His license number is on his letter. The statement that "the Association requires the credentials of the medical provider" is a request for information that had already been provided.

28.     The accommodation requested from the DEFENDANTS by MORRIS is to live with her four chickens, and unless the specific accommodation MORRIS requested would a) impose an undue financial and administrative burden on the DEFENDANTS, b) fundamentally alter the essential nature of the DEFENDANTS' operations, 3) pose a direct threat to the health or safety of others that cannot be reduced or eliminated by another reasonable accommodation, or 4) cause substantial physical damage to the

property of others that cannot be reduced or eliminated by another reasonable accommodation, the specific accommodation MORRIS requested must be granted.

29.   SUNSHINE's demand for extraneous information and information previously provided greatly exacerbated the symptoms of MORRIS's disability.

30.   On September 26, 2019, through her legal counsel and in writing, MORRIS requested that pursuant to the FHA, LEE COUNTY waive any restriction that would prevent MORRIS from living with her ESAs at her home within the SUNSHINE MOBILE VILLAGE Community in Fort Myers, Florida. The request was made because the requested accommodation was necessary to afford MORRIS an opportunity to use and enjoy her dwelling. (September 26, 2019, Written Request for FHA Accommodation is marked, attached, and incorporated herein as Exhibit 3.)

31.   The request for accommodation ended with an offer to explore alternatives that would enable the chickens to continue to provide emotional support to MORRIS, specifically:

> *My client and I are ready and willing to engage in dialogue regarding reasonable conditions that would mitigate any negative impacts stemming from Ms. Morris's chickens. May I please hear from you regarding this matter?*

32.   LEE COUNTY responded through counsel on October 9, 2019, flatly refusing to accommodate MORRIS's need to reside with her ESAs or even discuss waiving the restriction that prevents MORRIS from continuing to keep her ESAs. (Letter Denying Written Request for Accommodation is marked, attached, and incorporated herein as "Exhibit 4.")

33.     LEE COUNTY implied that MORRIS is faking her disabilities in order to get around the COUNTY's zoning restriction, noting that MORRIS did not reveal her status as a person with a disability until she was contacted by LEE COUNTY code enforcement.

34.     MORRIS had no reason or obligation to reveal to LEE COUNTY the fact that she suffers from disabilities until MORRIS was contacted by LEE COUNTY code enforcement.

35.     Without requesting additional information, LEE COUNTY took issue with the letter provided by MORRIS's psychiatrist, quibbling that it "does not explain or establish that the presence of one chicken alleviates any need created by her alleged disability, let alone how the presence of multiple chickens are necessary to address such a need." Rather than engaging in dialogue as invited LEE COUNTY instead flatly denied the requested accommodation.

36.     After pettifogging the letter of a credentialed, treating psychiatrist in a far better position to evaluate MORRIS's disability-related needs than LEE COUNTY's own municipality attorney, LEE COUNTY denied and refused to make the requested accommodation based upon the bald assertion that allowing MORRIS to live with her four chickens in her home would constitute "a fundamental alteration of the County's zoning regime." (*Id.*)

37.     LEE COUNTY has targeted MORRIS for legal action for her violation of Land Development Code Section 34-1291.

38.     LEE COUNTY is aware of the pendency of this action and refused to abate its enforcement action until MORRIS's discrimination claims could be considered on their merits. (The emails requesting LEE COUNTY to abate the enforcement action

and the responses thereto is marked, attached, and incorporated herein as composite "Exhibit 5." )

39. On November 4, 2019 a special magistrate gave MORRIS 30 days to remove her ESA's after which MORRIS will be fined $25.00 per day for each day her ESA's remain in her home. (Lee County Hearing Examiner's November 4, 2019 Order is marked, attached, and incorporated herein as "Exhibit 6.")

40. LEE COUNTY's prosecution of MORRIS for alleged code violations greatly exacerbated the symptoms of MORRIS's disabilities.

41. Guidance from the Department of Housing and Urban Development (HUD) governs the scope of inquiry a housing provider may legally make regarding a potential resident's need to reside with an assistance animal. Specifically, a housing provider may request a person seeking a reasonable accommodation "to provide documentation from a physician, psychiatrist, social worker, or other mental health professional that the animal provides emotional support that alleviates one or more of the identified symptoms or effects of an existing disability." Per HUD, such documentation "is sufficient if it establishes that an individual has a disability and that the animal in question will provide some type of disability-related assistance or emotional support." (HUD's April 25, 2013 Notice re: Service Animals and Assistance Animals for People with Disabilities in Housing and HUD-Funded Programs is is marked, attached, and incorporated herein as "Exhibit 7.")

42. MORRIS provided documentation to DEFENDANTS from her psychiatrist, a licensed mental health professional, that her hens provide emotional support which "will mitigate the symptoms she is currently experiencing."

43.  At all times relevant to this complaint, DEFENDANTS had actual knowledge of MORRIS's disabilities, her need for the support provided by her ESAs, and that the accommodation MORRIS requested was necessary to afford her an opportunity to use and enjoy her dwelling.

44.  DEFENDANTS' failure to modify their policies/rules/laws/zoning restrictions to accommodate MORRIS's's disability is discriminatory and unlawful.

45.  DEFENDANTS' actions were intentional, deliberate, willful, and in total and reckless disregard of MORRIS's rights and show total indifference to MORRIS's disabilities.

46.  MORRIS has been injured by DEFENDANTS' discriminatory practices and therefore MORRIS is an "aggrieved person" pursuant to 42 U.S.C. § 3602(i).

47.  As a direct and proximate result of DEFENDANTS' conduct, MORRIS incurred attorney's fees and costs and continues to incur same, and has suffered and continues to suffer irreparable loss and injury including, but not limited to, mental anguish, loss of dignity, emotional distress, humiliation, and loss of her right to equal housing opportunities regardless of disability.

48.  As a direct result of SUNSHINE's and LEE COUNTY's actions, MORRIS retained legal counsel to protect her FHA and civil rights and is obligated to pay them a fee for their services.

49.  All conditions precedent to the Plaintiff bringing this action have occurred, or the performance of such conditions have been waived by the Defendants.

## III. CLAIMS

### COUNT I
### LEE COUNTY'S FAILURE TO REASONABLY ACCOMMODATE

50. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 49 as if fully set forth herein.

51. MORRIS suffers from and has a history of suffering from mental and physical impairments that substantially limits one or more of her major life activities.

52. MORRIS is a person with disabilities within the meaning of the FHA and is thus protected under the FHA.

53. MORRIS is an aggrieved person under 42 U.S.C. § 3602.

54. MORRIS requested that LEE COUNTY waive its zoning restrictions so that she may reside with her ESAs and benefit from the assistance provided by her ESAs in coping with the symptoms of her disabilities.

55. Such accommodation is necessary to afford MORRIS an opportunity to use and enjoy her dwelling.

56. LEE COUNTY was provided reliable verification of MORRIS's disabilities and need to live with her ESAs from a licensed mental health care professional.

57. LEE COUNTY was specifically and expressly invited to engage in dialogue regarding MORRIS's requested accommodation.

58. LEE COUNTY unlawfully denied MORRIS's request for reasonable accommodation of her mental disability in the form of waiver of any local land use and zoning restrictions that would prevent her from continuing to live with and receive emotional support from her ESAs.

59.   Living with her ESAs helps ameliorate MORRIS's disability symptoms.

60.   MORRIS requires the ability to live with her ESAs in order to have the same opportunity to use and enjoy her dwelling as any non-disabled resident.

61.   LEE COUNTY has actual knowledge of MORRIS's disability and her need for an accommodation.

62.   MORRIS provided LEE COUNTY reliable, third-party verification from a licensed mental health care professional – her treating psychiatrist – of her disabilities and her disability-related need to reside with her ESAs.

63.   LEE COUNTY's failure to modify its policies/rules/laws/zoning restrictions to accommodate MORRIS's disabilities is discriminatory and unlawful.

64.   Such conduct by LEE COUNTY is in total and reckless disregard of MORRIS's rights.

65.   Defendant LEE COUNTY, though its conduct and acts described above, violated 42 U.S.C. § 3604(f) by failing to make reasonable accommodations in its rules, laws, policies, practices, services, and/or zoning restrictions when such accommodations are necessary to afford MORRIS an equal opportunity to use and enjoy her dwelling.

66.   Allowing MORRIS to reside in her own home with her four hens will not constitute a fundamental alteration of the County's zoning regime.

67.   LEE COUNTY knows or should know that the threat of removal of her ESAs, and/or legal actions including accruing daily fines, puts MORRIS at imminent risk of serious emotional distress and medical harm.

68.   Accommodating MORRIS's disability-related need to be able to reside with her four hens in her dwelling does not impose an undue financial and administrative burden on LEE COUNTY.

69.   Accommodating MORRIS's disability-related need to be able to reside with her four hens in her dwelling does not pose a direct threat to the health or safety of others that cannot be reduced or eliminated by another, alternative reasonable accommodation that allows MORRIS to reside with her four hens.

70.   Accommodating MORRIS's disability-related need to be able to reside with her four hens in her dwelling would not cause substantial physical damage to the property of others that cannot be reduced or eliminated by another, alternative reasonable accommodation that allows MORRIS to reside with her four hens.

71.   LEE COUNTY is or should be fully aware there is no legal basis to deny MORRIS's request to be exempted from any and all local land use and zoning ordinances or other restrictions that prevent her from living with her ESAs.

72.   All conditions precedent to the Plaintiff bringing this action have occurred, or the performance of such conditions have been waived by LEE COUNTY.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, KAREN MORRIS, requests that this Court and/or the jury:

A.   Enter judgment declaring that LEE COUNTY's actions and threatened future actions, as set forth above, violate federal law, including but not limited to the FHA;

B.   Enter a temporary restraining order and preliminary injunction immediately and permanently enjoining LEE COUNTY, including but not limited to its agents, representatives, employees, contractors, volunteers, and attorneys, from: Issue a permanent injunction enjoining Defendant LEE COUNTY: (i) from taking any adverse actions whatsoever against Plaintiff in relation to or regarding her emotional support animals or otherwise refusing to take any action that favorably impacts Plaintiff in relation to or regarding her emotional support animals; (ii) from

initiating any legal action against Plaintiff related to any and all local land use and zoning ordinances and restrictions that require the removal or termination of her emotional support animals; (iii) from initiating or levying any fines or other punitive monetary or other measures against Plaintiff related to any and all local land use and zoning ordinances and restrictions; (iv) from denying Plaintiff's request for reasonable accommodation; (v) from interfering with Plaintiff's rights under federal law, including but not limited to the FHA; and (vi) from contacting Plaintiff through any means or manner other than through Counsel;

C.  Enter a permanent injunction enjoining Defendant LEE COUNTY, including but not limited to its agents, representatives, employees, contractors, volunteers, and attorneys, from: Issue a permanent injunction enjoining Defendant LEE COUNTY: (i) from taking any adverse actions whatsoever against Plaintiff in relation to or regarding her emotional support animals or otherwise refusing to take any action that favorably impacts Plaintiff in relation to or regarding her emotional support animals; (ii) from initiating any legal action against Plaintiff related to any and all local land use and zoning ordinances and restrictions that require the removal or termination of her emotional support animals; (iii) from initiating or levying any fines or other punitive monetary or other measures against Plaintiff related to any and all local land use and zoning ordinances and restrictions; (iv) from denying Plaintiff's request for reasonable accommodation; (v) from interfering with Plaintiff's rights under federal law, including but not limited to the FHA; and (vi) from contacting Plaintiff through any means or manner other than through

D.  Award Plaintiff her reasonable attorney's fees and costs incurred in bringing this action to enforce her federal rights, including but not limited to those under the FHA; and

E.  Grant such other relief as justice may require.

**COUNT II**
**SUNSHINE MOBILE VILLAGE RESIDENTS ASSOCIATION, INC.'S**
**FAILURE TO REASONABLY ACCOMMODATE**

73.  MORRIS re-alleges and incorporates by reference paragraphs 1 through 49 as if fully set forth herein.

74.  MORRIS suffers from and/or has a history of suffering from a mental impairment that substantially limits one or more of her major life activities.

75.  MORRIS is a person with a disability within the meaning of and is thus protected by the FHA.

76.  MORRIS's ESAs help ameliorate the symptoms of her disabilities.

77.  MORRIS has a disability-related need to live with her ESAs in order to have equal use and enjoyment of her dwelling within SUNSHINE MOBILE VILLAGE.

78.  MORRIS requested that SUNSHINE waive its restrictions so that she may reside with her ESAs and benefit from the emotional support and assistance provided by her ESAs in coping with the symptoms of her disabilities.

79.  Such accommodation is necessary to afford MORRIS an opportunity to use and enjoy her dwelling.

80.  Living with her ESAs helps ameliorate MORRIS's disability symptoms.

81.   MORRIS requires the ability to live with her ESAs in order to have the same opportunity to use and enjoy her dwelling as any non-disabled resident.

82.   SUNSHINE was provided reliable, third-party verification from a licensed mental health care professional – her treating psychiatrist – of MORRIS's disabilities and her disability-related need to live with her ESAs.

83.   SUNSHINE had actual knowledge of MORRIS's disability and her need to live with her hens for disability-related emotional support, and instead demanded MORRIS provide extraneous information.

84.   As of the date of this filing SUNSHINE has failed to grant an accommodation.

85.   SUNSHINE has constructively and unlawfully denied MORRIS an accommodation by, *inter alia*, demanding extraneous information.

86.   Such conduct by SUNSHINE is in total and reckless disregard of MORRIS's rights.

87.   MORRIS is an aggrieved person as contemplated under 42 U.S.C. § 3602.

88.   Accommodating MORRIS's disability-related need to reside with her four hens in her dwelling does not impose an undue financial and administrative burden on SUNSHINE.

89.   Accommodating MORRIS's disability-related need to reside with her four hens in her dwelling does not pose a direct threat to the health or safety of others that cannot be reduced or eliminated by another, alternative reasonable accommodation that allows MORRIS to reside with her four hens.

90.   Accommodating MORRIS's disability-related need to reside with her four hens in her dwelling would not cause substantial physical damage to the property of others that

cannot be reduced or eliminated by another, alternative reasonable accommodation that allows MORRIS to reside with her four hens.

91. SUNSHINE'S failure to accommodate MORRIS's disability-related need for a reasonable accommodation is discriminatory and unlawful.

92. SUNSHINE's actions, inactions, and conduct constitute a conscious and reckless disregard for MORRIS's rights and show total indifference to MORRIS's disabilities.

93. Through SUSNHINES's conduct and acts described above, it violated 42 U.S.C. § 3604(f)(3)(B), by failing to make reasonable accommodations in its rules, policies, practices, or services, when such accommodations are necessary to afford MORRIS an equal opportunity to use and enjoy her dwelling.

94. The discriminatory conduct of SUNSHINE was intentional, willful, and taken in total disregard for MORRIS's rights.

95. As a direct and proximate result of SUNSHINE's failure to accommodate, MORRIS has suffered irreparable loss and injury including, but not limited to, mental anguish, loss of dignity, emotional distress, humiliation, and loss of her right to equal housing opportunities regardless of disability.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, KAREN MORRIS, requests that this Court and/or the jury:

F. Enter judgment declaring that SUNSHINE's actions and threatened future actions, as set forth above, violate federal law, including but not limited to the FHA;

G. Enter a temporary restraining order and preliminary injunction immediately and permanently enjoining SUNSHINE, including but not limited to its agents, representatives, employees, attorneys, Association Members and future Members enjoining Defendant SUNSHINE: (i) from taking any adverse actions whatsoever against Plaintiff in

relation to or regarding her emotional support animals or otherwise refusing to take any action that favorably impacts Plaintiff in relation to or regarding her emotional support animals; (ii) from initiating any legal action against Plaintiff related to any and all local land use and zoning ordinances and restrictions, rules, by-laws, policies, and/or practices that require the removal or termination of her emotional support animals; (iii) from initiating or levying any fines, assessments, fees, or other punitive monetary or other measures against Plaintiff related to any and all rules, by-laws, policies, and practices; (iv) from denying Plaintiff's request for reasonable accommodation; and (v) from interfering with Plaintiff's rights under federal law, including but not limited to the FHA;

H. Enter a permanent injunction enjoining Defendant SUNSHINE, including but not limited to its agents, representatives, employees, attorneys, Association Members and future Members enjoining Defendant SUNSHINE: (i) from taking any adverse actions whatsoever against Plaintiff in relation to or regarding her emotional support animals or otherwise refusing to take any action that favorably impacts Plaintiff in relation to or regarding her emotional support animals; (ii) from initiating any legal action against Plaintiff related to any and all local land use and zoning ordinances and restrictions, rules, by-laws, policies, and/or practices that require the removal or termination of her emotional support animals; (iii) from initiating or levying any fines, assessments, fees, or other punitive monetary or other measures against Plaintiff related to any and all local land use and zoning ordinances and restrictions, rules, by-laws, policies, and/or practices that require the removal or termination of her emotional support animals; (iv) from denying Plaintiff's request for reasonable

accommodation; and (v) from interfering with Plaintiff's rights under federal law, including but not limited to the FHA; and

I.  Require Defendant SUNSHINE to notify and distribute, in writing to each and every resident of the SUNSHINE VILLAGE Community, a legal statement enumerating residents' FHA rights with respect to, among other things, disability-related assistive animals;

J.  Award Plaintiff such damages as will fully compensate her for her injuries caused by SUNSHINE's and the other Defendant's discriminatory and tortious conduct;

K.  Award Plaintiff punitive damages;

L.  Award Plaintiff her reasonable attorney's fees and costs incurred in bringing this action to enforce her federal rights, including but not limited to those under the FHA;

M.  Grant such other relief as justice may require.

## COUNT III
## LEE COUNTY'S MAKING PLAINTIFF'S DWELLING UNAVAILABLE ON ACCOUNT OF DISABILITIES

96.  Plaintiff re-alleges and incorporate by reference Paragraphs 1-49 as if fully set forth herein.

97.  MORRIS requires the ability to live with her emotional support animals in order to have the same opportunity to enjoy her dwelling as any non-disabled resident.

98.  LEE COUNTY, knowing of MORRIS'S disability related need to live with her emotional support animals, nonetheless took enforcement action against MORRIS forcing her to choose between her emotional support animals and her home.

99.     The foregoing conduct and acts of LEE COUNTY constitute discrimination against a person in violation of 42 U.S.C. § 3604(f)(1)(A), FHA, by making a dwelling unavailable because of a handicap.

**WHEREFORE,** Plaintiff, KAREN MORRIS, requests that this Court and/or the jury:

A.  Enter judgment declaring that LEE COUNTY's actions and threatened future actions, as set forth above, violate federal law, including but not limited to the FHA;

B.  Enter a temporary restraining order and preliminary injunction immediately and permanently enjoining LEE COUNTY, including but not limited to its agents, representatives, employees, contractors, volunteers, and attorneys, from: Issue a permanent injunction enjoining Defendant LEE COUNTY: (i) from taking any adverse actions whatsoever against Plaintiff in relation to or regarding her emotional support animals or otherwise refusing to take any action that favorably impacts Plaintiff in relation to or regarding her emotional support animals; (ii) from initiating any legal action against Plaintiff related to any and all local land use and zoning ordinances and restrictions that require the removal or termination of her emotional support animals; (iii) from initiating or levying any fines or other punitive monetary or other measures against Plaintiff related to any and all local land use and zoning ordinances and restrictions; (iv) from denying Plaintiff's request for reasonable accommodation; (v) from interfering with Plaintiff's rights under federal law, including but not limited to the FHA; and (vi) from contacting Plaintiff through any means or manner other than through Counsel;

C.   Enter a permanent injunction enjoining Defendant LEE COUNTY, including but not limited to its agents, representatives, employees, contractors, volunteers, and attorneys, from: Issue a permanent injunction enjoining Defendant LEE COUNTY: (i) from taking any adverse actions whatsoever against Plaintiff in relation to or regarding her emotional support animals or otherwise refusing to take any action that favorably impacts Plaintiff in relation to or regarding her emotional support animals; (ii) from initiating any legal action against Plaintiff related to any and all local land use and zoning ordinances and restrictions that require the removal or termination of her emotional support animals; (iii) from initiating or levying any fines or other punitive monetary or other measures against Plaintiff related to any and all local land use and zoning ordinances and restrictions; (iv) from denying Plaintiff's request for reasonable accommodation; (v) from interfering with Plaintiff's rights under federal law, including but not limited to the FHA; and (vi) from contacting Plaintiff through any means or manner other than through counsel;

D.   Award Plaintiff her reasonable attorney's fees and costs incurred in bringing this action to enforce her federal rights, including but not limited to those under the FHA; and

E.   Grant such other relief as justice may require.

## IV. DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial for all issues so triable.

Respectfully submitted,

MARCY I. LAHART, P.A.                         VENZA LAW, PLLC
207 SE Tuscawilla Road                        931 Village Boulevard, #905-322

Micanopy, FL 32667
Telephone: (352) 224-5699
Facsimile: (888) 400-1464
marcy@floridaanimallawyer.com

BY: *s/ Marcy I. LaHart*
Marcy I. LaHart, Esq.
Florida Bar No. 0967009
*Counsel for Plaintiffs*

West Palm Beach, FL 33409
Office: (561) 596-6329
email: dvenza@venzalawpllc.com

BY: *s/ Denese Venza*
Denese Venza, Esq.
Florida Bar No. 599220
*Counsel for Plaintiffs*