

**BOARD OF COUNTY COMMISSIONERS**

Telephone (239) 533-2236
Facsimile (239) 485-2106

John E. Manning
*District One*

Cecil Pendergrass
*District Two*

Raymond Sandelli
*District Three*

Brian Hamman
*District Four*

Frank Mann
*District Five*

Roger Desjarlais
*County Manager*

Richard Wesch
*County Attorney*

Donna Marie Collins
*Chief Hearing Examiner*

*VIA EMAIL ONLY*

October 9, 2019

Marcy LaHart
Marcy I. LaHart, P.A.
207 SE Tuscawilla Road
Micanopy, Florida 32667
marcy@floridaanimallawyer.com

Re:   Karen Morris (VIO2019-04603)

Dear Ms. LaHart:

I am writing in response to your letter dated September 26, 2019, directed to David Paschall, which purportedly seeks an accommodation under the Fair Housing Act in order for Ms. Morris to house livestock in her mobile home in violation of the Lee County Land Development Code.

As an initial matter, it appears from your letter that you misunderstand the Lee County Land Development Code. Ms. Morris's property is zoned MH-1, as it is part of a mobile home subdivision. This type of zoning is different from the other residential districts in the County. As set forth in the LDC, "[t]he purpose and intent of the MH-1 and MH-2 mobile home residential districts is to accommodate the housing needs of those residents who prefer mobile home living and of those who desire an alternative to conventional dwellings, and to provide for properly located, equipped, and designed mobile home residential developments within the future urban areas." 34-731. Thus, contrary to the information set forth in your letter, this area is unlike other residential areas, such as single-family neighborhoods.

The LDC specifically provides that the keeping, raising, and breeding of any kind of poultry "may be permitted as set forth in this division." 34-1291. The LDC does permit the keeping, raising, and breeding of chickens or other poultry in any AG zoning district or as approved by Special Exception in RS-4 and RS-5 districts but only on the condition that "no coop or other structure for housing chickens or poultry is located closer than 100 feet to any dwelling unit under separate ownership unless the property only which the dwelling unit is located is being used for bona fide agricultural purposes." 34-1294. Thus, even in those districts where the keeping or raising of poultry is permitted by the ordinance or special exception, the chickens are not permitted to reside in any structure within 100 feet of any other dwelling under separate ownership. Given the location of Ms. Morris's property in MH-1 zoning, which is certainly within 100 feet of multiple neighbors, her property does not meet this requirement, which is equally applied to all non-disabled residents and exists for the health, safety, and quiet enjoyment of all residents. Moreover, Ms. Morris's property does not fall within the zoning districts of AG, RS-4, or RS-5 in which such use is permitted.

Marcy LaHart
October 9, 2019
Page 2

Furthermore, Ms. Morris did not raise this request until she was cited for a violation of the LDC of which she is in clear violation. There is no question that she has and continues to keep poultry in her mobile home, which is expressly prohibited by the LDC. Ms. Morris did not make the assertion that she has a disability or that the poultry are purported to be emotional support animals until after she was cited for a violation of the LDC, which prohibits the keeping of livestock in the dwelling. To the extent that there is any attempt to raise this issue before the hearing examiner at the upcoming hearing on her code violation, the hearing examiner is without authority to decide any issue other than whether Ms. Morris was in violation of the LDC of which there can be no dispute.

Additionally, while you contend that the County has an obligation to modify its LDC to allow a use that it does not permit to non-disabled residents, you cite no authority that would require the County to grant such preferential treatment to Ms. Morris as an accommodation to allow multiple chickens to reside in her mobile home, which is within 100 feet of multiple other residences. Indeed, the cases cited in the letter do not support Ms. Morris's request in this case. See, e.g., Howard v. City of Beavercreek, 276 F.3d 802, 806 (6th Cir. 2002) (concluding that the denial of a six-foot fence did not violate the FHA's reasonable accommodation requirement); Anderson v. City of Blue Ash, 798 F.3d 338, 363 (6th Cir. 2015) (addressing the use of a single therapy miniature horse in a single-family neighborhood, not an area zoned specifically for mobile homes).

Moreover, Ms. Morris has failed to provide information to establish an entitlement to a reasonable accommodation under the FHA. First, Ms. Morris has not identified any "handicap" as that term is defined under the FHA. Indeed, the letter from her physician does not identify any specific disability. In addition, even if Ms. Morris does have a "handicap" under the FHA, the FHA only requires reasonable accommodations. 42 U.S.C. § 3604(f). An accommodation is not reasonable if it imposes undue financial and administrative burdens on the county or "requires a fundamental alteration in the nature of the program." Schwarz, 544 F.3d at 1220. As the Eleventh Circuit has recognized, "ordering a municipality to waive a zoning rule ordinarily would cause a 'fundamental alteration' of its zoning scheme if the proposed use was incompatible with surrounding land uses." Id. at 1221; see also Schaw v. Habitat for Humanity of Citrus Cty., Inc., No. 17-13960, 2019 WL 4458370, at *3 (11th Cir. Sept. 18, 2019) ("This Court has explained—in imaginative terms—that '[t]he difference between [an] accommodation that is required and [a] transformation that is not is the difference between saddling a camel and removing its hump.'"). As the County previously has explained to Ms. Morris, her request seeks to fundamentally alter this zoning scheme. Or, in the terms that the Eleventh Circuit has described, the changes sought by Ms. Morris are removing the hump, not just saddling the camel.

The purpose and intent of MH-1 zoning district is different from other residential districts. For example, it has an increased density and the mobile homes are closer together than typical residential neighborhoods. As a result of the distinct nature of this zoning district, it has different permitted uses than other residential neighborhoods, including use related to the keeping and raising of poultry. Compare 34-735 with 34-694. In this instance, Ms. Morris is apparently seeking to eliminate two restrictions – (1) the keeping of poultry and (2) keeping of poultry within 100 feet of another residence. The waiver of these restrictions would alter the fundamental nature of this zoning plan to allow the keeping of livestock (multiple chickens) in very close proximity to the neighboring residences in this zoning district, which has been specifically designed for this type of housing. As the Eleventh Circuit has recognized, the County is entitled to deference in its local land use regulation,

in creating this zoning district, and devising the uses permitted for this district. Schwarz, 544 F.3d at 1223 ("The Supreme Court has squarely held that localities have a legitimate interest in creating single-family neighborhoods 'where family values, youth values, and the blessings of quiet seclusion and clear air make the area a sanctuary for people.'").

Even if the elimination of these land use requirements was not a fundamental alternation of the County's zoning scheme, the FHA further restricts reasonable accommodations to only be required when they are necessary to afford such person with equal opportunity to use and enjoy a dwelling. 42 U.S.C. § 3604(f); Schwarz, 544 F.3d at 1212. The "duty to make a reasonable accommodation does not simply spring from the fact that the handicapped person wants such an accommodation made." Id. at 1219. Instead, Ms. Morris must show that numerous chickens are required to be present in her dwelling to address a need caused by her disability. The note from Ms. Morris's doctor does not explain or establish that the presence of one chicken alleviates any need created by her alleged disability, let alone how the presence of multiple chickens are necessary to address such a need. As the Eleventh Circuit has recognized, the FHA "plainly requires the plaintiffs to show that the accommodation they requested actually alleviates the effects of a handicap." Id.; see also Ass'n of Apartment Owners of Liliuokalani Gardens at Waikiki v. Taylor, 892 F. Supp. 2d 1268, 1287 (D. Haw. 2012) (concluding that the animal must alleviate the disability). Ms. Morris has not provided any information to meet this requirement.

Therefore, based on the information provided by Ms. Morris and the requested accommodation, the County is not required to "remove the hump" and fundamentally alter this zoning district to allow Ms. Morris to keep livestock in her mobile home. While the County is not obligated to eliminate its use restrictions in this mobile home zoning district, to the extent you believe a further discussion would be productive, we would be glad to schedule such a meeting.

Sincerely,

*Joseph Adams*

Joseph A. Adams
Assistant County Attorney

JAA/les

cc via email only:  Andrea Fraser, Deputy County Attorney
                    David Loveland, Director of Community Development
                    Shawn McNulty, Building Official
                    David Paschall, Chief Code Officer